IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY DICKEY, | § | |
| individually and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 15-cv-3701 |
| v. | § | |
| | § | |
| LEADS NATIONAL CORP., and | § | CLASS ACTION |
| RAPID ADVANCE CANADA, LLC | § | |
| | § | |
| Defendants. | | |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

JEFFREY DICKEY, individually and on behalf of all other persons similarly situated, brings this action against Defendants LEADS NATIONAL CORP. and RAPID ADVANCE CANADA, LLC ("Defendants"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

**INTRODUCTION**

1.      Plaintiff brings this class action against Defendants to secure redress because they willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

2.      Defendants made or caused to be made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case.

4.      In response to Defendants' unlawful conduct, Plaintiff files the instant complaint seeking an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers registered on the NATIONAL DO NOT CALL REGISTRY ("DNC") and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

5.      Plaintiff JEFFREY DICKEY is a citizen of the State of Texas and resides in Montgomery, Montgomery County, Texas.

6.      Defendant LEADS NATIONAL CORP. is a corporation organized under the laws of the State of Wyoming, and maintains its principal office in Huntington Beach, California.  Defendants may be served with process by serving Incorp Services, Inc. at 1621 Central Avenue, Cheyenne, WY 82001.

7.      Defendant RAPID ADVANCE CANADA, LLC is a limited liability company organized under the laws of the State of Maryland, and maintains its principal office in Bethesda, Maryland. Defendant may be served with process by serving CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Ste. 820, Baltimore, MD 21202.

8.      Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

9.      Plaintiff is informed and believes and thereon alleges that at all relevant times, each and every Defendant was acting as an agent and/or employee of the other Defendant and was the owner, agent, servant, joint venturer and employee, of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of the other Defendant.  Plaintiff is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, the other Defendant.

**JURISDICTION & VENUE**

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.      The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

12.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendants.  Furthermore, the Plaintiff Class consists of at least one hundred members.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

14.      Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that

target this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

4

18.     As of October 16, 2013, unless the recipient has given <u>prior express written</u> <u>consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the National Do Not Call Registry.

19.     Furthermore, in 2008, the FCC issued a Declaratory Ruling reiterating that "a company on whose behalf a telephone call is made bears the responsibility for any violations."  In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

1991, CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008).  This ruling specifically recognized "on behalf of " liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b).

20.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

### COMMON FACTUAL ALLEGATIONS

21.     Defendant Leads National Corp. is a lead generation and telemarketing company that promotes its client's products to consumers by way of aggressive telemarketing campaigns. Defendant Rapid Advance is a lender that targets small business and start-ups as customers. Defendant Rapid Advance obtains many of its customers via telemarketing through third-party lead generation companies and call centers.  On information and belief, Defendant Rapid Advance contracted with Defendant Leads National Corp. to farm consumers' contact information and place telemarking calls to these consumers on behalf of Defendant Rapid Advance.     Accordingly, Defendant Leads National Corp. is an agent and/or employee of Defendant Rapid Advance, actively marketing *via* telephone to members of the public.

22.     Defendants place tens of thousands of telemarking calls to individuals nationwide. Unfortunately for consumers, Defendants, for their telemarking scheme, utilized (and continue to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their services.  Defendants obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers or extracting contact information from active websites. On information and belief, Defendant Rapid Advance contracted with Defendant Leads National

Corp. to place calls on its behalf under the misguided belief this arrangement insulates Defendant Rapid Advance from TCPA liability.

23.     In Defendants' overzealous attempt to market services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendants. Defendants knowingly made (and continue to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF JEFFREY DICKEY**

24.     Over twelve years ago on June 30, 2003, Plaintiff registered his cellular telephone number ending in 5805 with the National Do Not Call Registry.

25.     Between August 2015 and the date of this filing, Defendant Leads National Corp. contacted Plaintiff on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), at least 10 times without first obtaining Plaintiff's written consent.

26.     In fact, to the extent Plaintiff ever consented to Defendants' marketing calls, Plaintiff revoked his consent during his first conversation with Defendants Leads National Corp.'s call center representative.

27.     Plaintiff received all calls as described above on his cellular telephone assigned a number ending in 5805.

28.     Plaintiff's caller ID read "714-260-0763," "949-346-9797," "732-865-8040," "209-217-3234,"or "563-723-0497" whenever Defendant Leads National Corp. called his cellular telephone.

29.     Plaintiff was able to answer many of the calls and spoke with a live representative of Defendant Leads National Corp. after the call was routed.

30.     When Plaintiff first answered the call, the other end of the line was always silent for a moment before he was engaged by a representative of Defendant Leads National Corp..

31.     Defendants' representative always told Plaintiff he was calling about lending opportunities and asked Plaintiff if he would like to speak to a loan officer.

32.     On at least two occasions, the representative for Defendant Leads National Corp. told Plaintiff he was calling on behalf of "Rapid Advance."

33.     It was always apparent Defendant Leads National Corp.'s representative was speaking to him from a call center because Plaintiff could hear the sound of many people talking in the background.

34.     Plaintiff was not interested in Defendants' services and requested Defendants immediately remove his number from Defendants' call list and stop calling.  Plaintiff did not want Defendant's Leads National Corp. to call him, and he was not interested in Defendant Rapid Advance's products.

35.     Despite Plaintiff's request, Defendants continued to call his cellular telephone.

36.     Plaintiff was annoyed by the intrusive calls; therefore, he decided to research the phone number from which he had been receiving the calls.  Plaintiff viewed the calls as an invasion of his privacy and a disruption to his work day.

37.     Plaintiff performed an Internet search of the numbers from which Defendants called him.  The results confirmed he had been speaking to Defendants Leads National Corp., and Rapid Advance.

38.     Plaintiff also viewed online complaint boards, which indicated that many people had received unsolicited and unwanted calls just like the calls Plaintiff received.

39.     At the time of the calls, Plaintiff did not have a business relationship with Defendants, nor did Plaintiff request information from Defendants about their products or services.

40.     Plaintiff was annoyed by the calls and wanted Defendants to stop calling.

41.     It was obvious to Plaintiff that Defendants were engaged in a marketing campaign wherein Defendants contact a large number of consumers using an autodialer.

42.     Plaintiff believes his number was either dialed randomly or from a database obtained by Defendants, because Plaintiff never contacted Defendants or authorized Defendants to contact him.

43.     Plaintiff believed Defendants called him using an ATDS because Plaintiff received a large number of calls, indicating to Plaintiff based on his experience, that his cell phone number was stored in an electronic database or he was randomly dialed.

44.     There was silence on the other end of the line for several seconds before a live representative engaged him, indicating a live person had not dialed Plaintiff directly; and, when Plaintiff did actually speak with a live person, he could hear sounds of a call center in the background.

45.     Finally, Plaintiff believed an ATDS called him because he continued to receive calls despite having told the human call center representative to remove his number from Defendants' call list.

46.     On information and belief, Defendants utilized an automated system to call Plaintiff on every occasion.

47.     On information and belief, and based on the circumstances of the all the calls, Defendants called Plaintiff using an ATDS.

48.     Plaintiff understood the purpose of Defendants' calls was to solicit business from Plaintiff.

49.     Plaintiff electronically stored Defendants' number and a record of each call on his cellular telephone.

50.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

51.     Plaintiff pays the bill associated with the cellular telephone assigned the number ending in 5805.

52.     Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 5805.

53.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

54.     Plaintiff did not provide Defendants prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

55.     All calls Defendants made to Plaintiff violate 47 U.S.C. § 227(b)(1).

56.     Plaintiff has reason to believe Defendants has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

57.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

58.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

### A.     CLASS ALLEGATIONS

59.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following classes defined as follows (the "Class"):

> **"Robocall Class":** All individuals in the United States who received a call made by or on behalf of Defendants to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendants' records fail to indicate prior express written consent from the recipient to make such call.

> **"DNC Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendants within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendants has no record of consent to place such calls.

60.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

61.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

62.     Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

63.     Plaintiff and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and the Class members.

**B.     NUMEROSITY**

64.     The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

65.     On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendants' records.

**C.     COMMONALITY AND PREDOMINANCE**

66.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

12

67.     Common questions for the Class include, but are not necessarily limited to the following:

      a.    Whether Defendants' conduct violated the TCPA;

      b.    Whether Defendants or their agent(s) made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;

      c.    Whether Defendants or their agent(s) systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry.

      d.    Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

      e.    Whether Defendants or their agent(s) systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

      f.    Whether Defendants and its agent(s) should be enjoined from engaging in such conduct in the future.

**D.     TYPICALITY**

68.     Plaintiff's claims are typical of the claims of the other members of the Class.

69.     Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

**E.     ADEQUATE REPRESENTATION**

70.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

71.     Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

**F.     POLICIES GENERALLY APPLICABLE TO THE CLASS**

13

72.     This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

73.     Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.     SUPERIORITY**

74.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

75.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

76.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

77.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this FAC.

78.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

14

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

### ("Robocall Class" on behalf of Plaintiff and the Class)

79.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

80.     Defendants made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

81.     Defendants made the calls without prior express written consent of the Plaintiff and Plaintiff Class Members.

82.     The calls Defendants placed to Plaintiff invaded Plaintiff's privacy and disrupted his work day.

83.     The foregoing acts and omissions of Defendants constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

84.     As a result of Defendants' violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

85.     Because Defendants had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members.

86.     Plaintiff and the Plaintiff Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c)(5)

### ("DNC Class" on behalf of Plaintiff and the Class)

87.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

88.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

89.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

90.     47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and

16

must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

91.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

    a.    Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

    b.    Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

    c.    Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

    d.    Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

      e.     Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

      f.     Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

92.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and members of the DNC Class who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

93.     Defendants made, or directed to be made, more than one unsolicited telephone call to Plaintiff and members of the DNC Class within a 12-month period without their prior express consent to place such calls.

94.     Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendants, and/or Defendants do not have a record of consent to place telemarketing calls to them.

95.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

96.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200. As a result of Defendants' conduct alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

97.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

### ATTORNEY'S FEES

98.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

99.     Plaintiff is entitled to recover reasonable attorney fees pursuant to Fed. R. Civ. P. 23(h) and request the attorneys' fees be awarded when a class is certified.

### JURY DEMAND

100.    Plaintiff, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, pray for the following relief:

a.      An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Hughes Ellzey, LLP as lead Class Counsel.

b.      An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.       An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.       An injunction requiring Defendants and their agent(s) to cease all unsolicited telephone calling activities, and otherwise protect the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.       Pre-judgment and post-judgment interest on monetary relief;

f.       An award of reasonable attorneys' fees and court costs in this action; and

g.       All other and further relief as the Court deems necessary, just, and proper.

Dated:  December 23, 2015.

Respectfully Submitted,

_____*/s/ W. Craft Hughes*_____
W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Attorney-in-charge

OF COUNSEL:

Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**